*In re* T. H., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* T. H., Respondent-Appellant.)

Fifth District   No. 77-427

Opinion filed March 21, 1979.

Michael J. Rosborough and Debra Knight Loy, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kelly D. Long, State's Attorney, of Hillsboro (Raymond F. Buckley, Jr., and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Respondent appeals from a judgment of the circuit court of Montgomery County finding him to be delinquent and ordering that he be made a ward of the court. The dispositional hearing was stayed pending the outcome of this appeal.

On May 27, 1977,[1] a petition for an adjudication of wardship was filed against the respondent. The incident giving rise to the petition

---

[1] The brief of the State Appellate Defender on behalf of the respondent was not filed until August 30, 1978. The brief of the State's Attorneys Appellate Service Commission on behalf of the State's Attorney was filed on November 8, 1978. This court heard oral argument on December 14, 1978.

occurred at approximately 8:30 a.m. on May 18, 1977, when respondent struck another student, T.M., at Hillsboro High School. At the delinquency hearing it was established that both youths had been dating the same girl and that, upon hearing that T.M. had cursed at this girl earlier that morning, respondent approached T.M. on the school parking lot and struck T.M. twice. Prior to the first blow, respondent told T.M. that he did not like what the latter had said to their mutual girlfriend. One eyewitness testified that the first blow was merely a slap, followed by a blow with respondent's fist. It is undisputed that T.M. took no defensive action but stated to respondent, "You are going to get it now." With that, T.M. walked away. At no time was he knocked to the ground; however, as a result of the blows inflicted by the respondent, T.M. suffered an injury to his jaw for which he was hospitalized. Because his jaw was wired shut, he was unable to eat solid foods thus causing him to lose 25 pounds in approximately six weeks. Although T.M. admitted that he had participated in nonrelated fights in the past, he testified that after the first blow he informed respondent that he would not fight with him. T.M. was approximately five inches taller than respondent.

Prior to the adjudicatory hearing counsel for the respondent moved that the court grant a continuance under court supervision pursuant to section 4—7 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 704—7). This motion was denied. At the conclusion of the State's evidence counsel renewed his motion for continuance under supervision. After hearing testimony from the defense witnesses and argument of counsel, the court denied the motion for continuance and adjudged the respondent a ward of the court. Section 4—8 of the Juvenile Court Act provides in pertinent part:

> "After hearing the evidence the court shall make and note in the minutes of the proceeding a finding of whether or not the minor is a person described in Section 2—1. If it finds that the minor is not such a person or that the best interests of the minor and the public will not be served by adjudging him a ward of the court, the court shall order the petition dismissed and the minor discharged from any detention or restriction previously ordered in such proceeding." Ill. Rev. Stat. 1977, ch. 37, par. 704—8.

■■ It has been held that this section imposes a mandatory duty on the court to make two separate adjudications before finding that a minor should be made a ward of the court. (*In re Barr* (1976), 37 Ill. App. 3d 10, 344 N.E.2d 517; *In re Duffy* (1976), 44 Ill. App. 3d 799, 358 N.E.2d 1170.) Furthermore, an adjudication of wardship does not automatically follow a finding of delinquency. (*In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024, *cert. denied* (1978), 434 U.S. 1016, 54 L. Ed. 2d 761, 98 S. Ct. 734; *In re Smith* (1976), 40 Ill. App. 3d 248, 352 N.E. 2d 317.) We believe the court properly found respondent in this case to be delinquent however,

its finding that an adjudication of wardship was in the best interest of the minor and the public was in error.

In the case of *In re Driver* (1977), 46 Ill. App. 3d 574, 360 N.E.2d 1202, the court held that an adjudication of wardship was not supported by the record where the trial court refused to hear evidence concerning the respondent's best interests. In imposing a duty of making an informed decision on the juvenile court, the Fourth District remarked that such factors as the minor's current status in school and his family situation indicate his chances for future welfare and are relevant in determining wardship. That court did note, however, that proof of a *heinous* crime alone might show the requisite need for supervision.

We are here confronted with a situation where the trial court heard considerable evidence regarding the circumstances surrounding the incident, as well as the minor's character, home environment, scholastic performance, etc., but nevertheless ordered that the minor be made a ward of the court. We shall briefly highlight the significant portions of the evidence.

██ █ Among those testifying on behalf of the respondent were two Hillsboro High School teachers who stated that during the two years preceding this incident respondent had improved his scholastic record from C's and D's to honor roll grades, that he was a member of the wrestling team and had been elected co-captain for the upcoming school year, that he had a reputation for peacefulness in the community and that he was considered reliable and trustworthy. Even Ralph Ward, a teacher who witnessed part of the incident on the school grounds and who testified for the State, explained in an offer of proof that respondent had the emotional constitution of a typical teenager. The evidence further demonstrated that respondent lives in a good family environment and that he plans to attend college after completing his senior year. In the meantime, he obtained summer employment. Respondent had no prior record with the juvenile court and had never demonstrated a proclivity for aggressive or violent behavior. Thus, a finding that it was in his best interest to be made a ward of the court is not supported by the record. In holding that an adjudication of wardship was in the minor's and public's best interests, the trial court commented that the injury which resulted from the "unprovoked attack" was quite serious and the attendant medical treatment quite costly. These were the only bases for the court's decision. Contrary to the State's assertion, the expense incurred for medical treatment is irrelevant to the question of wardship. Such evidence would only reveal the best interest of the victim; however, consideration of the victim's best interest is not contemplated in the Act. (Ill. Rev. Stat. 1977, ch. 37, par. 704—8 (1).) We agree that the

respondent's actions were in no way excusable and that the serious injury suffered was indeed unfortunate. However, there was no evidence that respondent intended such a dire consequence when he struck Murphy. Again, only two blows were inflicted, neither of which was sufficient to knock the victim to the ground. This is not a "heinous" crime as discussed in *Driver*. While the extent of injury to the victim is a factor to be considered, the many other relevant factors all favorable to the respondent greatly outweigh the injury in this instance. The record as a whole convinces this court this was an isolated event rather than a course of conduct pursued by respondent and as such we fail to see how it could be in the public's best interest that respondent be adjudged a ward of the court.

In reversing a juvenile court's finding that two 14-year-old boys who had committed a trespass and minor acts of vandalism were delinquent, the court in *In re Johnson* (1961), 30 Ill. App. 2d 439, 444, 174 N.E.2d 907, stated:

> "As long ago as 1903 the then existing statute concerning delinquent children was construed as having the objective of providing care, not punishment; to prevent the boys from becoming criminals, not to punish them as such. [Citation.]
> * * *But this statute was not intended as a means to punish an isolated misdemeanor * * *."

For the foregoing reasons we do not believe that the adjudication of wardship in this case would further the purposes of the Juvenile Court Act and accordingly reverse the judgment of the circuit court of Montgomery County.

Reversed.

KARNS and KUNCE, JJ., concur.