918

*In re* E. J., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* E. J., Respondent-Appellant.)

Fourth District   No. 15527

Opinion filed December 6, 1979.

Richard J. Wilson and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Edwin R. Parkinson, State's Attorney, of Jacksonville (Marc D. Towler and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

This minor was found to be delinquent, was adjudicated a ward of the court, and committed to the Department of Corrections on July 15, 1976.

The commitment order was not acted upon or executed until March 1979—2 years and 9 months later!

We reverse and remand for a new dispositional hearing.

Three issues are raised in this appeal: (1) Whether the trial court abused its discretion in adjudicating the minor a ward of the court; (2) whether his commitment to the Department of Corrections was an abuse of discretion; and (3) whether it was error to direct execution of the 1976 dispositional order without first appointing counsel and conducting a new dispositional hearing. The nature of these issues requires a fairly detailed statement of facts.

The petition for adjudication of wardship alleged that E. J. was a delinquent by virtue of the fact that he committed a burglary at an elementary school in Jacksonville and that it was in the best interests of the minor and the public that he be adjudicated a ward of the court.

At the adjudicatory hearing, the principal of the elementary school testified that a number of other individuals were involved in the break-in and that they implicated E. J. Officials from the school met with parents of the youths and—except for E. J.—it was decided that the problem could be resolved within the school. The law authorities would not be notified if the children engaged in a school work-study program. The school officials indicated that the same arrangement would not be extended to E. J., however, because of his age and other factors. While parents of some of the individuals began to pay for the damage caused by the youths, E. J.'s parents made no such payment nor did they respond to a registered letter from the school in regard to payment. At a meeting with school officials, however, E. J.'s mother had indicated that restitution would be made.

The principal testified that an office door was jimmied open and destroyed. A door to a supply room received the same type of damage and bolts were broken from a safe and its entire turning mechanism removed. Supplies were strewn throughout the school, the soda machine was vandalized, and desks in various classrooms were rifled. A stopwatch, cassette recorders, and keys were taken, as well as funds that teachers had been collecting for various functions. When school officials attempted to talk to E. J. after the incident, he was "belligerent," "mouthy," "indignant," and showed no cooperation. The total damage at the school was estimated at approximately $1,100.

The principal of the school where E. J. was enrolled testified that E. J. was retained in the seventh grade because he did not attend school. There had been slight attendance in the first quarter but a complete absence of attendance during the second and third quarters. (There was, however, some improvement in E. J.'s attendance after the burglary incident.)

A youth who was present at the elementary school when the break-in occurred testified that E. J. was also present. Another youth testified that E. J. took numerous tapes, three tape players, and obtained a crowbar which several of the youths used in an attempt to open the safe.

At the conclusion of the adjudicatory hearing, the court announced that it was going to allow the petition, found E. J. delinquent under the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq.*) and adjudicated him a ward of the court. The court then referred the matter to the probation office for investigation. A written order, filed the same date, found E. J. to be delinquent and that it was in the best interests of the minor and the public that he be made a ward of the court, and it was so ordered.

At the dispositional hearing on July 15, 1976, the court noted that the report of investigation had been presented, examined, and considered by the court. On the basis of this report, the trial judge felt that it was in the best interests of the minor and the community that he be committed to the Department of Corrections and ordered accordingly. The court then told E. J. that it was hopeful that he would cooperate with the personnel at the Department of Corrections. He was released to the custody of his parents, but was told to be prepared, possibly the next day, to have someone pick him up to take him to the Department of Corrections.

A written dispositional order was filed the same date. It found that placement under section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—7) would not serve the best interests of the minor and the public and that the parents were unfit, unable, or unwilling to care for, protect, train, or discipline the minor. Judge Wright ordered that he be committed to the Department of Corrections.

For reasons not reflected in the record, the commitment order of July 15, 1976, was not executed. It was not until March 22, 1979, that E. J. was arrested and brought before Judge Seator. At that time he stated that he was James Hayes of Springfield. The State then called the Jacksonville police officer who had arrested the minor. The officer initially testified that he arrested E. J. on an outstanding warrant issued to his office on February 2, 1977, for E. J.'s failure to appear for commitment to the Department of Corrections. He identified the person in court as E. J. The officer later, in response to a question from the court, stated that he had not seen an actual warrant, only the order committing E. J. to the Department of Corrections.

E. J. was to be detained for seven days to allow the trial court and the State's Attorney to decide if further proceedings were necessary before ordering that he be transferred to the Juvenile Division of the Department of Corrections. The court informed E. J. that he was being held without bail because of the commitment order. He was remanded to the custody of a police officer and told that he would be informed of the disposition that would be made. The court told him that he was entitled to an attorney if he wanted one and then directed him to go with the officer.

Five days later, on March 27, 1979, with no additional hearings

having been conducted, the sheriff was directed to transport E. J. to the Department of Corrections in accordance with the dispositional order of July 15, 1976.

The minor does not challenge the finding of delinquency. He contends, however, that the court failed to consider whether it was in the best interests of the minor and the public that he be adjudicated a ward of the court. Thus, he claims the court failed to comply with section 4—8(2) of the Juvenile Court Act. Ill. Rev. Stat. 1977, ch. 37, par. 704—8(2).

■■ Two explicit findings must be made before a minor may be made a ward of the court. If the trial court finds a minor to be delinquent but fails to find that it is in the minor's and the public's best interests that he be made a ward of the court, then it lacks jurisdiction to enter a dispositional order. (*In re Driver* (1977), 46 Ill. App. 3d 574, 360 N.E.2d 1202.) In adjudicating wardship, the trial court is not required to use any particular language (*In re Jennings* (1977), 68 Ill. 2d 125, 368 N.E.2d 864), but the adjudication does not automatically follow a finding of delinquency. *In re T. H.* (1979), 70 Ill. App. 3d 522, 388 N.E.2d 862.

The minor here argues that the trial court *automatically* adjudicated him a ward of the court. Although the court entered a written adjudicatory order containing the finding in regard to best interests, it is argued that this is insufficient based upon this court's decision in *In re K. M.* (1979), 70 Ill. App. 3d 915, 389 N.E.2d 188. The minor in that case argued that an order placing her on conditional discharge was void for lack of jurisdiction because the trial court failed to consider her best interests or adjudicate her a ward of the court. That argument was found to be without merit. An adjudicatory order found her to be delinquent and expressly found that it was in the best interests of the minor and the public that she be made a ward of the court. While the report of proceedings gave no indication of an oral pronouncement of wardship or best interests, it did show that considerable discussion occurred between the court and counsel as to the best interests of the minor and the public. Furthermore, this court stated that "[t]he written order of December 29, 1977, was sufficient to meet the requirements of sections 4—8(2) and 5—2(1) of the Act." 70 Ill. App. 3d 915, 917, 389 N.E.2d 188, 189.

In the present case, the trial court's written order is sufficient to meet the requirements of section 4—8(2). Additionally, we note, contrary to the minor's contention, that the evidence presented at the adjudicatory hearing was not limited to that necessary to prove the minor's participation in the burglary at the school. The court also heard evidence concerning the failure of the minor or his parents to make restitution and of the minor's belligerent attitude toward the school officials. The evidence showed further that the minor did not return certain cassette players which the evidence indicated he took. There was testimony which

described the minor's lack of school attendance and the resultant failure in normal grade progression. These were certainly relevant factors for the court to consider when determining the minor's best interests. They were not relevant in determining whether he had committed the alleged burglary.

■■ Where the trial court makes the required findings and enters an adjudication of wardship which is supported by the record, its decision will be affirmed. An oral pronouncement is not required. (*In re Willis* (1978), 57 Ill. App. 3d 381, 373 N.E.2d 79.) The trial court here complied with the requirements of the Juvenile Court Act and it did not abuse its discretion in adjudicating E. J. a ward of the court.

Next, the minor claims that the trial court failed to consider alternative placement which might have provided adequate supervision without commitment to the Department of Corrections. He argues the record of the 1976 dispositional hearing fails to demonstrate that the trial court actually considered such placement and therefore the commitment order must be vacated. While from our view of the record we believe that his argument on this point would fail, we conclude the issue need not be addressed because the order of commitment must be vacated on other grounds.

At the conclusion of the dispositional hearing in 1976, the minor was remanded to the custody of his parents and told to be prepared, possibly the next day, to have someone from the sheriff's office transport him to the Department of Corrections. For reasons absolutely unexplained in the record, the 1976 commitment order was not executed until March 27, 1979. Five days earlier the minor was arrested and brought before the trial court. At that time he stated that he was James Hayes of Springfield. Witnesses were called to identify the person before the court and they testified that the individual was, in fact, E. J. At the conclusion of this brief hearing, the court decided that the minor should be detained for seven days so that the court and counsel could determine whether further proceedings were necessary before ordering transportation to the Department of Corrections. The court informed the minor that he was entitled to an attorney and then directed him to go with the arresting officer. No further proceedings were had in this case. On March 27 the trial court directed the sheriff to execute the 1976 commitment order.

The minor concedes that the 1976 order did not become void by the nearly three-year delay in execution. But he contends that the court erred in failing to appoint counsel and conduct a new dispositional hearing before ordering execution of the order.

We agree.

The record in this case is devoid of any evidence to suggest why the order was not executed for nearly three years or to describe what had

occurred in the minor's life during the interim. Contrary to the State's assertion, we find no evidence to indicate that the minor either caused the delay in execution or refused counsel when he was arrested in 1979. The court's statement to him at the conclusion of the March 22 hearing can hardly be classified as a voluntary waiver of counsel.

Juvenile proceedings under the Act are to be administered in the spirit of humane concern for, and to promote, the welfare of the minor and to serve the best interest of the community. (*In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024, *cert. denied sub nom. Beasley v. Illinois* (1978), 434 U.S. 1016, 54 L. Ed. 2d 761, 98 S. Ct. 734.) Whether these policies would best be served by commitment to the Department of Corrections after such an unusual and extended interval we cannot surmise. As a court of review, we are limited to the record filed in this court. But when it fails to contain an explanation for the events occurring below, we are prevented from conducting a meaningful review.

If sound reasons justified execution of this nearly three-year-old dispositional order, they should have been presented, on the record, to the trial court. Since they were not, we conclude that the dispositional order must be vacated. Immediately following oral argument of this case, an order vacating the 1976 dispositional order was entered. The cause is now remanded for a new dispositional hearing.

Reversed and remanded.

CRAVEN and TRAPP, JJ., concur.