*In re* LOIS POWERS, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* GLORIA POWERS *et al.*, Respondents-Appellants.)

Second District    No. 80-320

Opinion filed March 27, 1981.

Randy Johnson, of Miller, Feda & Barbosa, of Elgin, and Thomas O. McCulloch, Public Defender, of Geneva (Judith M. Brawka, Assistant Public Defender, of counsel), for appellants.

Eugene L. Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The facts of this case are somewhat unusual. The minor was placed in a foster home on March 17, 1977. The reasons for this placement are not disclosed in the record. In October 1977 a series of visits between the child and the parents were begun. On March 29, 1979, the State filed its petition in this case to have the minor declared a dependent, and, at the same time, the visitations between the parents and the child were expanded to provide for such periods three times a week, four hours each, at the home of the parents. These visits were supervised in part by a homemaker from the Northwest Suburban Homemakers Service and in part by the foster mother. On August 2, 1979, a supplemental petition to adjudicate was filed on the grounds that, while she was in the home of her parents, the minor was neglected in that her environment was injurious to her health and that the minor was dependent due to the mental and

physical disabilities of her parents so that the parents were unfit to have the care, custody and control of the minor.

The respondents, the parents of the minor, appeal from the adjudication and dispositional order and the findings of the circuit court of Kane County adjudicating their daughter a neglected and dependent minor and finding them to be unfit and unable to care for the minor pursuant to the provisions of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, pars. 702—4, 702—5, 705—2 and 705—7).

■■ The respondents contend that the finding of the trial court that the minor was dependent and neglected and that they were unfit was against the manifest weight of the evidence and should be reversed. (*In re Christenberry* (1979), 69 Ill. App. 3d 565.) Initially, the respondents contend that although the applicable burden of proof on the issue of dependence and neglect is the preponderance of the evidence, the State must prove the parents to be unfit by clear and convincing evidence in order to deprive them of their custodial rights. (See *In re Nitz* (1979), 76 Ill. App. 3d 15, 21.) Their reliance on *Nitz* is misplaced because the State sought to terminate parental rights in that case rather than custodial rights as in the present case. To deprive the parents of custodial rights requires a finding that the parents are unfit or unable, other than for financial reason alone, to properly care for the minor or unwilling to do so and that the custody change is in the minor's best interest. Ill. Rev. Stat. 1979, ch. 37, pars. 705—2 and 705—7.

■■■ While clear and convincing evidence of unfitness is necessary to terminate parental rights, wide discretion is vested in the trial judge in child custody cases. (*In re Hurley* (1976), 44 Ill. App. 3d 260, 266.) Although parents have a superior right to the custody of their children (*Giacopelli v. The Florence Crittenton Home* (1959), 16 Ill. 2d 556, 565), their right is not absolute and "shall not prevail when the court determines that it is contrary to the best interest of the child" (Ill. Rev. Stat. 1979, ch. 37, par. 701—2(3)(c); *In re Martin* (1975), 31 Ill. App. 3d 288, 292-93). Cases involving custody rights of parents are *sui generis*, and each of them must be decided in accordance with the particular facts of each case; the determination of the trial court in these cases will not be disturbed unless it is against the manifest weight of the evidence. (*Martin*, at 293.) We turn then to determine whether or not the findings of the trial court were against the manifest weight of the evidence.

In the case at bar, respondents argue that the State failed to show that Lois was a neglected or dependent child or that they were unfit to have custody of the child. They point particularly to the lack of evidence indicating any abuse, malnutrition or psychological problems of the child. Sections 2—4 and 2—5 of the Juvenile Court Act provide in relevant part:

Section 2—4(1)(b): "Those who are neglected include any minor

under 18 years of age * * * (b) whose environment is injurious to his welfare * * *." (Ill. Rev. Stat. 1979, ch. 37, par. 702—4.)

Section 2—5(1)(b): "Those who are dependent include any minor under 18 years of age * * * (b) who is without proper care because of the physical or mental disability of his parent[s] * * *." (Ill. Rev. Stat. 1979, ch. 37, par. 702—5.)

A good deal of evidence in this case dealt with the activities of the parents and the child during the supervised visitations. The homemaker testified that she continually had to remind the parents to cook lunch and that when it was prepared it was often inadequate. More striking is the evidence of the parents' failure to take the proper precautions for the child's safety and failure to exert active and effective supervision over the child during the visitations. The parents also demonstrated a lack of care, emotional support or love for the minor child. The mother failed to play with the child, and both parents failed to attain any rapport with the child through playing with her or holding her. There was testimony that of the 12-hours-per-week visitation period the parents actually spent only two hours with the child. These facts, as presented by the homemaker and the foster mother, demonstrate that the natural parents did not and probably cannot develop many of the parenting skills that are needed to raise the child.

Additionally, by stipulation of the parties, the court considered the reports of two psychiatrists, Dr. Steven J. Kingsbury and Dr. F. P. Johnson. It was Dr. Kingsbury's opinion that neither parent has the capability to function effectively as a parent although motivation of both parents to assume the parental role appeared sincere and strong. While Dr. Johnson found that both parents demonstrated features of inadequate personality (ineffectual responses to emotional and social demands, ineptness and social instability) and schizoid personalities (seclusiveness and eccentricity), he felt that these aspects of their character and lifestyle would not necessarily prevent their combined and/or separate capacity to effectively parent. Despite the personality and lifestyle deficiencies and difficulties demonstrated by the parents and despite the mother's history of numerous psychiatric hospitalizations and current apparent need of psycho-active medication and periodic out-patient care, it was Dr. Johnson's opinion that until hard evidence of clear parental inadequacy, neglect and/or abuse is demonstrated by either or both parties the parents should be considered capable of parenting.

■■■ We recognize the tragedy present in this case where both parents show a sincere desire to care for their child but the evidence indicates that they are unable to do so. This court need not and should not wait until the child is abused or suffers grave emotional, psychological or physical damage where there is sufficient evidence of the parents' behavior with

the child depicting the previous neglect of the child. (*In re Brooks* (1978), 63 Ill. App. 3d 328, 339.) There was sufficient evidence in this case concerning the respondents' behavior with reference to the minor child in their home environment to support the finding of the trial court that the minor was a neglected and dependent child pursuant to sections 2—4 and 2—5 of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, pars. 702—4 and 702—5) and sufficient evidence for the court to find the natural parents to be unfit. The trial court did not abuse its discretion in finding the child to be neglected and dependent and the parents to be unfit, and such findings are not against the manifest weight of the evidence.

The respondents contend that they were denied substantial fairness and the interests of justice were frustrated when the trial court refused to grant their motion for a continuance.

The original petition for adjudication was filed on March 29, 1979, and set for initial review by the court on May 24, 1979. On that date the matter was continued to August 2, 1979. On August 2, 1979, a supplemental petition was filed and the cause was set for hearing on October 4, 1979. Respondents were present in court on that date. On October 4, 1979, on motion of the respondent father for a continuance and by agreement of the parties, the case was continued to November 9, 1979, at 9:30 a.m. for hearing. On that date the attorney for the respondent mother orally requested a continuance on the grounds that his client was out of State, and the respondent father through his attorney joined in the motion; the attorney for the father respondent represented to the court that there were State proceedings pending in Arizona which precluded the parents from returning. No other details were given to the court. The State objected to the continuance, and the court heard the arguments of counsel and denied the motion for continuance.

■■■ Whether a continuance should be granted is within the sound discretion of the trial court, and its exercise will not be set aside absent a clear showing of abuse. (*Robinson v. Thompson* (1978), 58 Ill. App. 3d 269, 271; *Bethany Reformed Church of Lynwood v. Hager* (1979), 68 Ill. App. 3d 509, 511.) In the case at bar, the court must look further than the parents' rights to appear in court (*Cf., Bethany*, at 512) and protect the strong bond between the parent and the child. The court must give consideration to the well-being of the child. (See *In re Stilley* (1977), 66 Ill. 2d 515, 521.) In this particular case, the determination of the custody of the minor had been in question since March 1977. By granting the continuance, the right to her custody would be held in abeyance for another undetermined period of time since respondents' attorneys did not advise the court when respondents could appear. Additionally, the respondents failed to show that the failure to grant the continuance would jeopardize their case. (*Economy Fire & Casualty Co. v. Warren* (1979), 71 Ill. App.

3d 625, 629.) The parties made no effort to show the details of the alleged legal proceeding in Arizona or that they had sought its continuance in an effort to return to Illinois and attend the hearing in question. Generally, the discretion of the trial court to deny a motion for continuance based on a party's absence from the jurisdiction has been upheld by the appellate courts of this State. This is especially true where the movant fails to specify the reasons why the party's presence was necessary or the time he would be ready for trial (*Westlake v. Moffitt* (1975), 30 Ill. App. 3d 597, 599), or where the movant failed to act diligently. (See *In re Johnson* (1977), 48 Ill. App. 3d 370, 373.) The trial court did not abuse its discretion in denying respondents' motion for a continuance.

The trial court orders entered on November 9, 1979, adjudicating the minor child a neglected and dependent child, making said minor a ward of the court and placing her under the guardianship of the Department of Children and Family Services are affirmed.

Affirmed.

UNVERZAGT and NASH, JJ., concur.