In re STACIE JOHNSON et al., Minors (The People of the State of Illinois, Petitioner, v. Johnnie M. Johnson, Respondent-Appellee (Sandra Aden et al., Illinois Department of Children and Family Services, Appellants)).—In re STACIE JOHNSON et al., Minors (The People of the State of Illinois, Petitioner-Appellee v. Johnnie M. Johnson, Respondent-Appellant).

Fourth District   Nos. 4—84—0251, 4—84—0255 cons.

Opinion filed June 28, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellants Sandra Aden and Gary T. Morgan.

James A. Martinkus, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for Johnnie M. Johnson.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Rebecca L. White, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

In cause No. 4—84—0255, the Johnsons' three daughters were adjudicated abused minors within the meaning of section 2—4 of the Juvenile Court Act (Act) (Ill. Rev. Stat. 1981, ch. 37, par. 702—4), and were placed in the custody of the Department of Children and Family Services (DCFS). An appeal was taken (*In re Johnson* (1983), 114 Ill. App. 3d 1160 (Rule 23 order)), and this court affirmed in part, reversed the dispositional order as to the mother, and remanded the cause for further proceedings. The circuit court conducted further hearings and another appeal was taken by respondent, which was dismissed by this court as premature. (*In re* Johnson (Feb. 7, 1984), 4th Dist. Gen. No. 4—83—0753, dismissed.) Additional hearings were conducted, and, at the close of a review hearing on March 9, 1984, the court found the parents unable to care for the minors under section 5—7(1) of the Act. (Ill. Rev. Stat. 1983, ch. 37, par. 705—7(1).) The mother appeals.

Cause No. 4—84—0251 arose from the above case. On October 27, 1983, the circuit court ordered at least one extended visitation per month between the minors and their mother, and if any party resisted visitation it was to be brought to the court's attention. On February 2, 1984, the respondent-mother filed a petition for rule to show cause requesting that the court find Sandra Aden (DCFS caseworker), Ju-

dith Sattazahn (DCFS case review administrator), and Gary T. Morgan (DCFS guardian) in indirect civil contempt for failure to accomplish extended visitation or bringing the matter to the court's attention; and for attorney's fees in bringing the petition. After hearings, the circuit court held Aden and Morgan in indirect civil contempt for having scheduled no visitation for the month of January 1984, found Aden had purged herself by arranging February visitation, and that Morgan could purge himself by paying the mother's attorney fees of $450. The court entered a Rule 304(a) (87 Ill. 2d R. 304(a)) finding, and this appeal followed.

The appeals were consolidated on the motion of the respondent-mother, and are referred to herein by case number.

We first consider petitioner's motion to dismiss the appeal in No. 4—84—0255 for lack of a final order. The motion and objection thereto were ordered taken with the case. In pronouncing the March 9, 1984, order, the trial court contemporaneously set a review hearing for June 26, 1984. At the June hearing, the case was set for review on August 23, 1984. The docket entry for the August hearing, attached to petitioner's motion and outside the record on appeal, shows the case set for further review on October 30, 1984. Petitioner contends that since the August 1984 order left the cause on appeal pending, the appeal must be dismissed for lack of a final order. .

Respondent points out that in announcing the March 9, 1984, order, the trial court made a Rule 304(a) finding of no just reason to delay enforcement or an appeal. Such finding under Rule 304(a), however, has no effect whatever if the order to which it attaches is not in fact a final judgment as to one or more parties or claims. Reviewing courts have had to state this proposition repeatedly in dismissing appeals taken from nonfinal orders to which the finding was appended. At the same time, if a Rule 304(a) finding is made as to an order which is in fact final, the affected party loses the right to appeal by waiting until termination of the remainder of the case. (See Ill. Ann. Stat., ch. 110A, par. 304, Supplement to Historical and Practice Notes, at 396 (Smith-Hurd Supp. 1983), and cases cited therein.) In juvenile cases, an adjudication of wardship is generally not a final appealable order, but appeal lies from a dispositional order. *In re Smith* (1980), 80 Ill. App. 3d 380, 399 N.E.2d 701; *In re J.N.* (1982), 91 Ill. 2d 122, 435 N.E.2d 473.

■ We find that the court's March 9, 1984, order was a final, appealable order. The circuit court thereby made its dispositional ruling pursuant to this court's order on remand in No. 4—82—0657 and found reason to withhold custody from the natural mother under sec-

tion 5—7(1) of the Act. The entry of a Rule 304(a) finding was indication of the judge's intent that the order be final. Even after an appeal is taken, circuit court jurisdiction in matters involving minors adjudicated abused and placed in the custody of DCFS is necessarily of a continuing nature. (See, *e.g.*, Ill. Rev. Stat. 1983, ch. 37, pars. 705—8(1), 705—6, 705—4.) After considering the record, we conclude that the contemporaneous setting of a further review hearing was in the context of the court's inherent powers to call the case for review, rather than of a nature to deprive the March 1984 order of finality for purposes of review.

We recognize the convenience of setting a further review date in such cases while the parties are present before the court. We suggest as better practice, and less confusing to the parties and reviewing courts considering the finality of the judgment, that the judge make clear he is setting a review hearing in the exercise of his inherent powers and as a matter *separate and apart* from the order otherwise entered.

For the foregoing reasons, the motion to dismiss in No. 4—84—0255 is denied. Treatment of the issues raised requires an excursus into what has transpired to date in the cause from which the appeals were taken.

According to the evidence, Mr. Johnson began seeing the respondent-mother in 1975, married her in 1978, and initiated adoption proceedings for her four children (daughters born in 1968, 1969, and 1971, and a son born in 1973) in 1980, which were finalized in 1981. The cause began after the oldest daughter complained at school of physical abuse by the adoptive father. DCFS was called on the abuse report, which led to the filing on May 17, 1982, of a two-count petition in the Champaign circuit court. Count I alleged the three minor daughters of John and Johnnie Johnson were abused by Mr. Johnson's having committed sex offenses against them, in that he had intercourse with the two older daughters and fondled the youngest daughter. Count II alleged abuse in that the mother had allowed the sex offenses to be committed against the minors. A shelter-care order was entered. The guardianship administrator of DCFS was named temporary custodian with power to place pending adjudication, and the minors were placed in foster care.

At the June 30, 1982, adjudicatory hearing, the minors each testified that the acts of sexual abuse described in the complaint had been occurring since they were about seven years old. They had not told their mother of the incidents, which occurred only when she was out of the house. There was testimony that the two older daughters had

been engaged since the summer of 1981 to clean on Saturdays at the apartment of a 52-year-old male friend of their adoptive father; evidence included checks written by the friend to the girls. According to the testimony, the man instead participated in sexual activities with the girls, joined several times a month by the adoptive father. Mrs. Johnson testified that she did house-cleaning three weekdays from 8:30 a.m. to 12:30 p.m. and was usually home when the children returned from school, but was out of the home during church choir rehearsal Monday nights from 7 p.m. until 9:15 p.m.

At the close of the State's evidence on the petition, the court made a finding in favor of the respondent mother on count II. At the conclusion of the evidence the court found the minors had been sexually abused by John Johnson and that Davis had engaged in sexual activity with the two older daughters with the knowledge of the adoptive father. The court further noted as distressing the fact that each of the larger checks written by Davis to the minors contained the purported endorsement of the respondent-mother. The court found her understanding of what the checks were for was incredible.

At the dispositional hearing on August 17, 1982, the court concluded that guardianship was essential, reaffirmed its finding of abuse as to count I, found the minors abused and made them wards of the court, and found it in the best interest of the minors and the public that the guardianship administrator of DCFS be appointed permanent guardian with power to place. The parents were ordered to establish and maintain regular visitation and cooperate with the guardian. The judge said he understood that since the adjudicatory hearing there had been reluctance by one or more of the children to attend visits, and he did not want to force visits but hoped there would be a point when visitation could begin. A written dispositional order was filed on September 7, 1982. Both the natural mother and the adoptive father appealed.

This court affirmed in part, but reversed the dispositional order as to the mother:

"The language of section 5—7(1) requires that a parent be found to be unfit or unable, other than for financial reasons, to protect or care for the minor, or that the parent is unwilling to do so before custody may be taken from that parent. (Ill. Rev. Stat. 1983, ch. 37, par. 705—7(1); *In re Powers* (1981), 94 Ill. App. 3d 646, 418 N.E.2d 1145.) However, the record must contain evidence that the parent is unfit, unable, or unwilling to care for the minor. (See *People v. Grieve* (1971), 131 Ill. App. 2d 1078, 267 N.E.2d 19.) The record in the case at bar is de-

void of any such evidence with respect to the respondent mother. Therefore, we reverse the dispositional order with respect to the respondent mother and remand for further proceedings on that issue.

We are aware that the father, who was found by the trial court to have committed sex offenses against the minors, continues to reside with the mother in the family home. On remand, the trial court is directed to consider the impact of the father's continued presence upon the mother's ability or willingness to care for the minors and protect them from harm, in determining whether custody of the minors should be returned to the respondent mother." (No. 4—82—0657.)

The record shows a review hearing was held March 31, 1983, with the prior dispositional order to remain in effect. After this court's order in No. 4—82—0657 was filed, the circuit court, on its own motion, scheduled a dispositional hearing for July 7, 1983. The circuit court thereafter conducted several hearings on the custody matter: On July 7, 1983; on August 24, 1983; on October 27, 1983; and on March 9, 1984 (the order appealed from). DCFS filed numerous reports with the court during this time. All of the evidence presented below is not discussed here, but some review is necessary.

Suffice it to say that, as early as the July 7, 1983, hearing, the court expressed its concern over the girls' emotional problems, and was convinced that a summary return of the children to the mother's custody was not in their best interests. He continued the case for further dispositional hearing in August 1983, ordering that the mother cooperate with counseling in conjunction with that being afforded her daughters, and directing the guardian to arrange extended visitation between the mother and her daughters in her home. At the August 24, 1983, hearing, after interviewing the minors in chambers, the judge reiterated his concern over the mother's inability to provide for the emotional needs of her daughters under the circumstances. The judge said he was encouraged, however, by the progress that had been made in the case, and believed the reunification of the mother and daughters was achievable in the foreseeable future, stating that it would not be forestalled indefinitely if the progress continued. At the October 27, 1983, hearing, the judge made it clear that, although he believed the parents were still unable, for reasons other than financial, to care for and protect the respondent minors, and that it would be premature to return them home, he was looking forward to a date for the return of custody to the mother. He set a review hearing for April 26, 1984, stating that at that time the burden would be on peti-

tioner, and that he would conduct a review sooner upon the request of the parties. The court further ordered DCFS to arrange at least one weekend visitation between the respondent-mother and her daughters each month.

The respondent's petition for rule to show cause was filed on February 2, 1984, and a hearing was conducted on February 23, 1984. It is apparent that after the October 1983 hearing, the progress which had been made in the case, as well as the circumstances encouraging the return of the minors to the mother's custody, took a reverse. DCFS caseworker Aden sent respondent a proposal of extended and weekend visits through February 1984, including the weekends of November 11, 1983, November 23, 1983 (Thanksgiving), and December 23, 1983 (Christmas). The mother informed Aden that she had already made plans for the weekend of November 11, for Thanksgiving, and for Christmas, all of which included her husband, John Johnson. A DCFS report suggests that Mr. Johnson had moved back into the family residence by late November 1983. A visitation scheduled for the weekend of December 3, 1983, was cancelled because the minors and their mother were at odds over whether the minors would attend her church with her. Respondent did not wish her daughters to visit if they would not attend the church. The two older daughters told Aden they did not want to go to the church because its members knew about the incest situation. They were uncomfortable and embarrassed in the church. Aden suspended further attempts to arrange visits, informing both Mrs. Johnson and the children that nothing would be done in relation to visits until the situation could be examined. On January 5, 1984, Aden called Mrs. Johnson to tell her that the DCFS administrative case review had been rescheduled to January 30, 1984. The review hearing on January 30, 1984, was suspended shortly after it began, when an impasse was reached with the Johnsons and their attorney, who insisted on tape-recording the session.

After hearings on respondent-mother's rule to show cause, conducted on February 23, 1984, and March 9, 1984, the court conducted a separate dispositional hearing on March 9, 1984. At the hearing, the court stated its belief that the "to care for" language of section 5—7(1) of the Act included the emotional needs of minors adjudged wards of the court. He observed that the danger to the emotional well-being of the children also presented physical problems for safety, particularly the physical dangers involved if the minors felt they had to run away from their home. The court therefore found the parents unable for reasons other than financial circumstances alone, to care for, protect, train, or discipline the minors, and that appropriate ser-

vices aimed at family preservation had been unsuccessful in rectifying the conditions which led to this finding.

On appeal in No. 4—84—0255, respondent maintains that the circuit court's dispositional order should be reversed, and custody of the minors restored to her for several reasons: (1) The circuit court failed to obey this court's mandate in No. 4—82—0657, and abused its discretion in arbitrarily denying the respondent-mother custody of her daughters; (2) the court failed to make sufficient findings to remove the minors from their mother; (3) the court abused its discretion by taking judicial notice of certain items not in evidence; (4) the court abused its discretion by requiring the respondent-mother to state that her children had been sexually mistreated prior to returning custody to her. (We note, in connection with the issues raised on appeal, that respondent filed with this court a motion to file the brief previously filed in No. 4—83—0753 as the brief in this case, and the motion was granted.)

■ We first consider the respondent's contention that the circuit court failed to obey this court's mandate on remand in cause No. 4—82—0657. As has been generally stated, on remand it is incumbent on the circuit court to follow the directions of a reviewing court. (*Relph v. Board of Education* (1981), 84 Ill. 2d 436, 420 N.E.2d 147.) Respondent's argument relies on the last sentence quoted above from this court's order, directing the circuit court to consider the impact of the father's continued presence upon the mother's ability or willingness to care for the minors and protect them from harm, in determining whether custody should be returned to the respondent-mother.

First, respondent has misconstrued this court's direction on remand, which, as pointed out by the State, indicated two purposes. The order in No. 4—82—0657 reversed the dispositional order with respect to the respondent-mother, and remanded the cause for further proceedings *on that issue*. The circuit court was further directed to consider the father's continued presence in the family home in determining whether custody of the minors should be returned to the mother, *i.e.*, as a factor in that determination.

The fact that there was testimony at the July 7, 1983, hearing that the adoptive father no longer resided in the family home did not dictate that custody be placed with the respondent-mother. The circuit court still had to decide the proper dispositional order with respect to her, consistent with the requirements of section 5—7(1) of the Act. This the trial court did. Moreover, given the purposes of the Act, we concur in the circuit court's conclusion that the emotional needs of the minors was a proper factor for consideration in determining custody

under section 5—7(1).

■ Respondent argues by reply brief that the only hearings pertinent to the issues on appeal are those of July and August 1983. This argument is without merit. Under Supreme Court Rule 321 (87 Ill. 2d R. 321), the record on appeal consists of "the judgment appealed from, the notice of appeal, and the entire original common law trial court record, unless the parties stipulate for, or the trial court *** or the reviewing court, orders less." Respondent would limit this court's consideration to the record of hearings conducted in July and August 1983, precisely the appeal dismissed as premature in No. 4—83—0753. She cannot limit this court's consideration to the record of these two hearings.

■ We next consider respondent's contention that the trial court made insufficient findings under section 5—7(1) of the Act to take custody of the minors from her. Section 5—7(1) states in pertinent part:

> "If the court finds that [1] the parents, guardian or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that [2] appropriate services aimed at family preservation and family reunification have been unsuccessful in rectifying the conditions which have led to such a finding *** and that [3] it is in the best interest of the minor to take him from the custody of his parents, guardian or custodian, the court may *** commit him to [DCFS] for care and service." (Ill. Rev. Stat. 1983, ch. 37, par. 705—7(1)(f).)

Respondent maintains that before taking custody of the minors from her, the court was required to make specific record findings on each factor mentioned in the statute—parental unfitness, that services aimed at family preservation had been unsuccessful, and that removing the minors from her custody was in their best interest. She contends the court exceeded its authority, as it did not make a finding on the second statutory factor.

Respondent treats this finding as prerequisite to removing the minors from her custody. First, respondent has cited no authority, and we know of none, which would require a circuit court to enter an explicit record finding on the second factor referenced in section 5—7(1) of the Act before placing custody of such minors with DCFS. Second, the record shows that the unfitness here was a function of the emotional circumstances of, and the situation faced by, the minors, and which the available services had been unsuccessful in resolving. (See

*In re E.J.* (1979), 78 Ill. App. 3d 918, 921-22, 397 N.E.2d 918, 920-21.) Third, the circuit court explicitly referenced this factor and made such a finding at the March 9, 1984, hearing. Respondent claims that as the circuit court found her able to protect and care for her children, it exceeded its statutory authority by taking custody from her. The record reflects that the circuit court found the respondent would be physically capable of protecting and caring for her children, but could not meet their emotional needs. As remarked upon above, we conclude that the circuit court was within its authority in taking the minors from the custody of the respondent. Respondent further argues that since the evidence showed the father had removed himself from the family home, the "problem" had been rectified, thereby preventing the circuit court from making this finding. We disagree.

■ Respondent next maintains that the circuit court abused its discretion by taking judicial notice when, in stating the ruling at the July 7, 1983, hearing, the judge remarked that he did not think the court was abusing judicial notice to be cognizant of what experts had found in intensive studies which followed children who had experienced sexual abuse. Respondent contends that since the court had not been asked to take notice of any studies, and did not provide any information regarding those referred to, the studies did not qualify for judicial notice, and the court abused its discretion by basing its opinion in part thereon. The State argues that respondent has waived this argument as there was no timely objection to the court's remarks.

We agree that this argument may be treated as waived. It is well established in Illinois that general objections as to evidence may not be availed of when raised for the first time on review. (See *Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 150 N.E.2d 144; E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 103.2, at 5-7 (3d ed. 1979), and cases cited therein.) Further, judicial notice of a fact does not prevent a party from disputing the fact by putting on evidence. (*Ohio Bell Telephone Co. v. Public Utilities Com.* (1937), 301 U.S. 292, 81 L. Ed. 1093, 57 S. Ct. 724.) Respondent offered no objection, question, or evidence. Moreover, we would also reject this argument on the merits. (See generally E. Cleary & M. Graham, Handbook of Illinois Evidence secs. 202.3 and 203.2, at 37-39, 43-44 (3d ed. 1979).) After reviewing the record, we conclude that the "studies" alluded to by the court were not the basis of the March 9, 1984, dispositional order. As pointed out by the petitioner, there is a presumption that only competent evidence is considered when the court sits as the trier of fact. *Williams v. Williams* (1955), 8 Ill. App. 2d 1, 130 N.E.2d 291.

■ We next turn to respondent's contention that the circuit court abused its discretion by requiring her to state that her children had been sexually abused by their adoptive father before returning custody to her. Our review of the record discloses no point at which the respondent was required to make such a statement. Respondent quotes a remark made by the court at the July 7, 1983, review hearing in a colloquy between the judge and respondent's counsel, to the effect that he did not know how respondent could protect the minors from something she did not believe had occurred. The trial court's concern was directed to the mother's failure to understand and believe that the children themselves were convinced and believed that the abuse had occurred, not what the mother actually believed had happened. Also, at the October 27, 1983, hearing, the court specifically said that it did not intend to require the respondent to make such a declaration, and observed that she had been moving in a positive direction without candidly confronting the issue of whether the sexual abuse had occurred. The respondent argues by reply brief that the trial judge did make such a requirement of her at a hearing on October 30, 1984, and asks that the record on appeal be supplemented to include the record of that hearing. Respondent has filed no motion with this court to so supplement the record on appeal. (87 Ill. 2d Rules 329, 361.) Furthermore, what may have subsequently occurred is not before us on review of the order of March 9, 1984.

■ Respondent also raises by reply brief a request that this court assess the costs of transcription for the dispositional hearings on March 9, 1984, and June 24, 1984, against the State under Supreme Court Rule 330 (87 Ill. 2d R. 330). Pursuant to the appellee's motion in this court to supplement the record on appeal in No. 4—84—0255, the issue was heard in the circuit court on October 22, 1984. The circuit court ruled that the report of proceedings be supplemented with these transcripts at the cost of the respondent-appellant. The March 9, 1984, hearing was the basis for the order on appeal, and the June 26, 1984, hearing was argued as pertinent to the appeal as raising a potential mootness issue. Respondent argues that the transcripts were immaterial and irrelevant to the issues before this court, and that the costs should be assessed against the State. The circuit court heard argument in this matter, although not framed in terms of Rule 330, and we find no error in its resolution of the motion.

■ We next consider the appeal in No. 4—84—0251, wherein Aden and Morgan, of DCFS, argue that the record does not support the findings of contempt against them and, further, that the court's decision awarding attorney fees against Morgan is barred under the

doctrine of sovereign immunity. The record shows that the circuit court regarded the facts as presenting a question of indirect civil contempt of court, in that DCFS failed to arrange at least one extended visitation between the minors and their mother during the month of January 1984, as required by the October 1983 order.

■■ All courts are vested with an inherent power to punish for contempt as an essential incident to the maintenance of their authority and the proper administration and execution of their judicial powers. (*People v. Javaras* (1972), 51 Ill. 2d 296, 299, 281 N.E.2d 670, 671; *In re G.B.* (1981), 88 Ill. 2d 36, 41, 430 N.E.2d 1096, 1098.) An essential element of any contempt is the wilfulness of the conduct. (*People v. Wilcox* (1955), 5 Ill. 2d 222, 125 N.E.2d 453; *People v. Patrick* (1980), 83 Ill. App. 3d 951, 404 N.E.2d 1042.) Although the circuit court's displeasure that problems of scheduling visitation had not been brought to its attention is understandable, we conclude that the facts in evidence do not support a finding of wilful contempt as to Aden. It is unnecessary to detail her efforts here, but the record is replete with the continuing difficulties posed in visitation, perhaps largely a function of the emotional dynamics in the circumstances which brought the minors before the court. We likewise conclude that the evidence does not support a finding of wilful contempt as to Morgan, who was not present in court at the time of the October 1983 order.

Further, the law requires that for a finding of contempt to be based on a violation of an order of the court, the order's terms must be set out with certainty, clarity, and conciseness. (*O'Leary v. Allphin* (1976), 64 Ill. 2d 500, 356 N.E.2d 551; *People v. Wilcox* (1955), 5 Ill. 2d 222, 125 N.E.2d 453; *In re M.C.* (1980), 89 Ill. App. 3d 1130, 412 N.E.2d 709.) The basis for the contempt is the oral statements of the court, which were:

> "I'll grant the request and I will require that there be at least one extended visit per month. *** In the event that due to the parties resistance in some way that suggests they're not going to cooperate with it, that's a matter to bring to my attention on an emergency basis almost in the nature of a shelter care hearing or something to that effect. I'll arbitrate and we'll see where we stand."

We do not believe that the court's October order was sufficiently specific in stating either (1) that DCFS was the party required to bring resistance to visitation to the attention of the court, or (2) how immediately the matter had to be taken up with the court. The record shows that Aden had contacted the assistant State's Attorney on the

case several times to have the case set for review because of the difficulties encountered—beginning with an attempt to reach the assistant State's Attorney in November 1983, and discussions with her in December 1983 and January 1984. Moreover, nothing in the record suggests that respondent *sought* to have visitation arranged in January 1984, and respondent made no effort to bring the matter to the court's attention during that month.

In view of the lack of definiteness in the court's October 1983 order, and the circumstances of this case, we reverse the findings of contempt as to Aden and Morgan. As stated in *Mowery*:

> "The inherent power of contempt is a powerful one; it is not to be used lightly nor when other adequate remedies are available; if it is used, it must conform strictly to the dictates of the law." (*People v. Mowery* (1983), 116 Ill. App. 3d 695, 704, 452 N.E.2d 363, 370.)

In view of our disposition on the findings of contempt, we need not address the attorney fees issue.

In conclusion, we affirm the dispositional order in cause No. 4—84—0255, reverse the findings of contempt in cause No. 4—84—0251, and vacate the order requiring Morgan to pay respondent's attorney fees.

Affirmed in part, reversed in part.

GREEN, P.J., and TRAPP, J., concur.