732

*In re* J.K.F. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Deborah Fontenot, Respondent-Appellant).

Fourth District   No. 4—87—0917

Opinion filed September 30, 1988.

Diana Lenik, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Denise Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

On November 23, 1987, the circuit court of Champaign County awarded custody of 13-year-old J.K.F. to the boy's former stepfather, Chester Fontenot. Previously, the court found that while living with their respondent mother Deborah Fontenot, J.K.F. and his sister J.C.F. were abused minors as defined by the Juvenile Court Act (Act) (Ill. Rev. Stat. 1985, ch. 37, pars. 702—4(2)(a)(i), (2)(b)). Deborah appeals the custody order alleging the trial court erred in placing the custody of J.K.F. with Chester. We affirm.

On January 5, 1987, the trial court found that J.K.F and J.C.F. were abused minors. (Ill. Rev. Stat. 1985, ch. 37, pars. 702—4(2)(a)(i), (2)(b).) The court found the children had been inappropriately beaten and disciplined by their angry mother. At a dispositional hearing held on October 20, 1986, the court ordered J.C.F. placed in the care and custody of her natural father, Chester, and J.K.F. placed with the Department of Children and Family Services (DCFS). This court affirmed the order of the trial court regarding the finding of abuse. *In re J.K.F.* (4th Dist. 1987), No. 4—87—0241 (order under Supreme Court Rule 23).

After several dispositional hearings held to review the parties' situation, on November 23, 1987, the trial court found Deborah remained unable, for reasons other than financial circumstances alone, to care for, protect, train, and discipline J.K.F. (See Ill. Rev. Stat., 1986 Supp., ch. 37, par. 705—7(1).) The court opined it was in the best interests of J.K.F. that he be placed in the custody of Chester. Guardianship of the child was to remain with DCFS until further order.

Chester is not the biological father of J.K.F. The whereabouts of the boy's natural father is unknown. Deborah argues it is not in the best interests of J.K.F. that he be placed in the custody of a man who is unrelated, rather than his natural mother.

It is undisputed a natural parent has a superior right to the custody of his child. However, that right is not absolute and must yield to the best interests of the child. (*Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 158 N.E.2d 613.) Section 1—2(3)(c) provides: "The parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the best interests of the child." (Ill. Rev. Stat. 1985, ch. 37, par. 701—2(3)(c).) Unlike in an adoption scenario, the best interests of the child is the

standard in a custody case under the Juvenile Court Act and the trial court has wide discretion. (*In re Powers* (1981), 94 Ill. App. 3d 646, 418 N.E.2d 1145.) Section 5—7(1)(a) of the Act gives the court authority to place a child in the custody of a "suitable other person" if the court finds the parents "are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor *** and that it is in the best interest of the minor to take him from the custody of his parents." (Ill. Rev. Stat., 1986 Supp., ch. 37, par. 705—7(1)(a).) If the "best interests" standard can be attained only by placing the child in the custody of someone other than the natural parent, it is unnecessary for the court to find the natural parent unfit to care for the child. (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417.) In *Giacopelli*, the supreme court held: "Fitness of the parent is only one of the factors to be considered in determining how the best interest of the child may be served *** all other matters that have a bearing upon the welfare of the child are to be considered." *Giacopelli*, 16 Ill. 2d at 565, 158 N.E.2d at 618.

■ Custody rights of parents are determined on a case-by-case basis. Our supreme court in *In re Stilley* (1977), 66 Ill. 2d 515, 520, 363 N.E.2d 820, 822, observed that in a case as delicate as a child custody or neglect case, the trial court's opportunity to observe the demeanor and conduct of parties and witnesses must be given great weight. Thus the determination of the trial court in these cases will not be disturbed unless it is palpably against the manifest weight of the evidence. *Stilley*, 66 Ill. 2d 515, 363 N.E.2d 820; *Powers*, 94 Ill. App. 3d 646, 418 N.E.2d 1145.

■ The record reflects the trial court has once declared J.K.F. an abused minor and placed him in the custody of DCFS. (Ill. Rev. Stat. 1985, ch. 37, pars. 702—4, 705—7.) The Act requires that a hearing be held on the issue of the "fitness" of the abusive parent before the custody of the child is restored to that parent. (Ill. Rev. Stat., 1986 Supp., ch. 37, pars. 705—2(1)(d), 705—8(3), (4).) Our review of the evidence leads us to the conclusion the trial court's decision to place J.K.F. in the custody of Chester, after conducting what was in part a "fitness" hearing, was not against the manifest weight of the evidence.

From the time J.K.F. was placed in the custody of DCFS, the trial court had heard voluminous testimony as to the relationship between Deborah and her son versus the relationship between Chester and J.K.F. The respective relationships were interpreted by a social worker and a clinical psychologist after having conducted supervised

visits of the parties. The social worker, Nancy Delaplane, who observed J.K.F., Chester, and J.C.F. interact for three hours, reported J.K.F. indicated he enjoyed a recent visit for two weekends in Indiana with Chester and J.C.F., which centered around church activities. Chester is a Baptist minister. He teaches two days a week in Champaign, Illinois. His housekeeper cares for J.C.F. while Chester is away. Chester indicated he believed the most effective method of disciplining a boy J.K.F.'s age is by restricting or withholding privileges, rather than corporal punishment. J.K.F. refers to Chester as his "father" and acknowledged the latter has disciplined him, but did so in a fair manner. By contrast, J.K.F. said he was afraid of his mother because she was so unpredictable and physically abusive. J.K.F. and Chester share a mutual interest in sports, particularly basketball. Delaplane stated the interaction of the trio was "relaxed, trustful, and caring" and summarized her impressions as follows:

> "My assessment of the parent-child relationship between Chester Fontanot [sic] and his step-son J.K.F. is that it is positive, shows mutual close bonding and caring, and both expressed to me a strong desire for J.K.F. to be permitted to live with 'my father.' In addition, a close sibling relationship and bonding exists between J.K.F. and J.C.F., who also wants her brother to 'live at my house.' The family unit functions positively also, relaxed and companionable in being together, with a sense of acceptance and love among all three that I felt and observed in my three-hour visit with them."

The clinical psychologist, Dr. Paul Joffe, who observed the interaction between Deborah and J.K.F. during an hour and a half interview, opined that while there were potentially destructive elements in the mother-son relationship, there was also hope for improvement. He suggested that J.K.F. be returned to Deborah's custody on a trial basis, with the condition that the court ban corporal punishment in the household and order weekly counseling with a trained professional, who would mediate conflicts that arose between them.

The record also contained the report from an Indiana agency regarding a foster care home license Chester attempted to obtain. The agency denied the license based on a letter from an unnamed source reporting that there were incidents of domestic violence in Chester's home which involved gunshot fire and required police intervention. The letter further alleged Chester was absent from the home four to five days a week while teaching in Illinois. Deborah argues it was error for the court to place minimal weight on this report in making its custody determination.

The court found the report not particularly reliable because the agency's decision not to license Chester was based on reported incidents of violence, the source of which was unknown. The domestic trouble allegedly occurred at a time when Chester's most recently estranged wife lived in his home. The trial judge noted the particulars of the report were vague, and reasoned that if the former wife instigated the violence, the threat has been eliminated now that she is no longer in the home.

More clearly in error was the agency's report Chester was out of town for four to five days a week. The evidence presented at the dispositional hearings revealed Chester is gone only two days per week during the school year. The court concluded: "I am left with the distinct feeling, *** I have before me far more facts than the Indiana agency did. Most importantly, I suppose, I have the benefit of my conversations with [J.K.F.]." Given the nature of the report and its unsubstantiated data, we find the court's limited consideration of it was justified.

It is clear the trial court gave substantial weight to the wishes of J.K.F. in determining his custody and best interests. In chambers, J.K.F. was asked what his feelings were, and he responded as follows: "I just—I just can't really live with my mother because—because of the things she has done. *** I would truthfully rather be with my father [Chester]." The boy's wishes, coupled with the evidence supporting the trial court's conclusion Deborah continued to be unable to properly care for, train and discipline J.K.F., compels us to find the court's decision to grant Chester custody of the boy was well founded.

The decision of the circuit court of Champaign County is affirmed.

Affirmed.

GREEN, P.J., and SPITZ, J., concur.