2024 IL App (1st) 241566

FIFTH DIVISION
December 27, 2024

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-24-1566

| | | |
|---|---|---|
| *In re* D.F., a Minor, | ) | |
| | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | No. 22 JA 00835 |
| v. | ) | |
| | ) | Honorable |
| Shaniqua B. | ) | Levander Smith, Jr., |
| | ) | Judge Presiding. |
| Respondent-Appellant). | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Oden Johnson and Mitchell concurred in the judgment and opinion.

**OPINION**

¶ 1 Generally, a timely appeal divests the trial court of jurisdiction. And generally, this court does not decide moot questions. But there are exceptions to most rules in the law, and this appeal requires us to honor established exceptions to both of those important general rules.

¶ 2 The respondent in this case, Shaniqua B., appeals from the trial court's refusal to hear her motion for unsupervised visitation with her son, D.F., on the grounds that the court lacked jurisdiction to consider that question—or indeed to enter any order of substance—during the pendency of Shaniqua's appeal from the court's prior adjudicatory findings. We granted Shaniqua's petition for leave to appeal that refusal. At the same time, to ensure a prompt ruling on her motion, we also revested the trial court with limited jurisdiction to hear Shaniqua's motion,

which it then considered and granted with conditions.

¶ 3     The parties agree that the question put to us in this appeal is now largely moot (and may become entirely moot by the time we issue this decision). Shaniqua, however, urges us to consider the question of the trial court's continuing jurisdiction in child protection cases under the public interest exception to the mootness doctrine. She argues that it is an important issue that has and will continue to affect the ability of parents to make demonstrated progress toward the return home of their children while not sacrificing their right to appeal the trial court's adjudicatory and dispositional findings. We agree and, for the reasons that follow, hold that the trial court not only has continuing jurisdiction in child protection cases but the duty, during the pendency of an appeal, to exercise that jurisdiction in accordance with the Juvenile Court Act of 1987 (Juvenile Court Act or Act) (705 ILCS 405/1-1 *et seq.* (West 2022)).

¶ 4                                    I. BACKGROUND

¶ 5                                A. Initial Proceedings

¶ 6     On November 10, 2022, the State petitioned for D.F., a male child born on January 5, 2016, and D.F.'s three older sisters, K.C. (born November 22, 2011), K.Y. (born August 22, 2013), and K.F. (born January 5, 2015), to be adjudged wards of the court pursuant to section 2-3 of the Juvenile Court Act (*id.* § 2-3). The State alleged that D.F. was neglected based on an injurious environment (*id.* § 2-3(1)(b)) and abused as a result of both excessive corporal punishment and exposure to a substantial risk of physical injury (*id.* § 2-3(2)(ii), (v)). It further alleged that K.C., K.Y., and K.F. were neglected due to an injurious environment (*id.* § 2-3(1)(b)) and abused due to a substantial risk of physical injury (*id.* § 2-3(2)(ii)).

¶ 7 In support of these requested findings, the State alleged that on October 28, 2022, D.F. "was observed to have multiple healed linear and loop marks about his upper body as well as a lump on his forehead" and that he reported Shaniqua "recently hit him in the head repeatedly with a can and beat him with a cord in the past" and also that she "withholds food as a form of punishment." The State further alleged that Shaniqua admitted hitting D.F. and his sisters with a belt. The State amended its petition on November 2, 2023, based on these same facts, to allege that D.F. was physically abused, pursuant to section 2-3(2)(i) of the Act (*id.* § 2-3(2)(i)).

¶ 8 At a temporary custody hearing held on November 14, 2022, the trial court determined that there was probable cause to conclude that the children were abused, neglected, or dependent. It agreed with the State that urgent and immediate necessity existed to remove D.F. from Shaniqua's custody and that visits between the two of them should be restricted to supervised day visits. D.F.'s sisters, however, would remain in their mother's care under an order of protection.

¶ 9 At the adjudicatory hearing held on January 19, 2024, the parties agreed to proceed by stipulation. The trial court found the State had met its burden on the allegations that D.F. was abused under section 2-3(2)(i) (physical abuse), section 2-3(2)(ii) (substantial risk of physical injury), and section 2-3(2)(v) (excessive corporal punishment) of the Act (*id.* § 2-3(2)(i), (ii), (v)) and that K.C, K.F., and K.Y. were neglected under section 2-3(1)(b) (injurious environment) of the Act (*id.* § 2-3(1)(b)).

¶ 10 At the dispositional and permanency hearings held immediately following, the court concluded that Shaniqua was "fit, able, and willing to care for, protect, train, and discipline" D.F.'s sisters, but was "unable for some reason other than financial circumstances alone" to do so for D.F. Reunification services had been successful as to the girls, the court found, and it was not in

their best interests to be made wards of the court, but such efforts had been unsuccessful as to D.F., and he was adjudged a ward of the court. The court established a permanency goal for D.F. of return home within 12 months and a permanency goal for K.C., K.Y., and K.F. of remain home, subject to an order of protective supervision under section 2-24 of the Act (*id.* § 2-24) that required Shaniqua to, among other things, cooperate with the Department of Children and Family Services (DCFS), attend parenting classes and counseling, and refrain from using or allowing anyone else to use corporal punishment on the minors.

¶ 11    DCFS caseworker Deanna Woodard testified at the dispositional hearing that Shaniqua and D.F. had been having weekly day visits supervised by the foster parent. She agreed that DCFS was supposed to supervise and observe those visits at least monthly but acknowledged that the last DCFS-supervised visit had occurred 10 months earlier, in March 2023. She stated that she would begin observing the visits again now that she was back from leave. She needed to do so, she told the court, before she could recommend unsupervised visits.

¶ 12    In its January 2024 permanency report, DCFS recommended that visits with D.F. remain supervised but indicated that the agency would support unsupervised visits after Shaniqua engaged in the Nurturing Parent Program.

¶ 13                              B. Post-Appeal Proceedings

¶ 14    On February 16, 2024, Shaniqua took an appeal as of right (appeal No. 1-24-0430), pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016), from the trial court's dispositional order, the final and appealable order from which a parent may challenge adjudicatory findings of abuse and neglect. In an opinion filed on December 3, 2024, we affirmed the trial court's findings that D.F. was abused under sections 2-3(2)(ii) (substantial risk of physical injury)

4

and 2-3(2)(v) (excessive corporal punishment) of the Act (705 ILCS 405/2-3(2)(ii), (v) (West 2022)) and its finding that K.C, K.F., and K.Y. were neglected under section 2-3(1)(b) (injurious environment) of the Act (*id.* § 2-3(1)(b)) but reversed the court's finding that D.F. was abused under section 2-3(2)(i) (physical abuse) of the Act (*id.* § 2-3(2)(i)). *In re K.C.*, 2024 IL App (1st) 240430, ¶ 94. Pursuant to Illinois Supreme Court Rule 368(a) (eff. Oct. 1, 2020), this court's mandate will be transmitted to the circuit court no earlier than 35 days after the entry of that judgment.

¶ 15    While that appeal was still pending, Shaniqua moved the trial court for unsupervised day visits with D.F. and a permanency hearing, on the basis that she had completed a required parenting class, attended therapy and other services, and had consistently engaged in supervised day visits with D.F. In an attached memorandum of law, Shaniqua's counsel argued that, despite the pending appeal, the trial court had continuing jurisdiction to consider her requests because unsupervised visitation was not an issue that would substantially modify the case on appeal.

¶ 16    The parties were in court on the motion on July 19, 2024. The assistant state's attorney began by stating, "I'll just note that the case is still on appeal." The court then said, "Well, we are up for nothing. This case is on appeal. I'm not doing anything on it at all subsequent hearings. I have read your memorandum, [Mr. Ginzky (Shaniqua's counsel)]. I'm not hearing anything on this today so let's get a date."

¶ 17    The court allowed Shaniqua's counsel to state his client's position for the record, however, and the following exchange took place:

"[MR. GINZKY]: I think this position that Permanency Hearings and Motions Concerning Visits can't be heard while the Adjudication and Disposition is being appealed.

5

I'm not clear what the exact legal basis for it is. I think it's certainly extremely prejudicial to my client's exercise of her rights. It's very prejudicial in the best interests of the child. Again, I'm unclear what the exact legal basis is for it given that the purpose of it, the purpose of the Circuit Court's divestment of jurisdiction is to prevent interference with the matter on review. Permanency Orders and Orders Concerning Visitation don't affect the substance of the review of an Adjudication and Disposition.

THE COURT: So you say the Court has, the Court is not making any substantive decisions regarding this case. Every one you stated: Permanency Hearings, Motions; these are all substantive decisions of the Court. That is it.

Have a good day please, people."

¶ 18 The assistant public guardian then asked and was permitted to state the position of her office:

"MS. KUENZLI: I just state our office largely agrees with [Mr. Ginzky] on this point and believes that Permanency Hearings and Motions for Visits Would be done and heard because they don't deal with the issues on appeal being Dispositional and Adjudications so we would join in [Mr. Ginzky's] argument regarding that today. Thank you."

The State indicated that it had "[n]othing to add" beyond "the general rule" that upon "the filing of a Notice of Appeal," jurisdiction "is removed from the Circuit Court," and DCFS took no position on the matter. The court again refused to rule on the pending motion for unsupervised visits.

¶ 19 On August 2, 2024, Shaniqua petitioned this court, under Illinois Supreme Court Rule

306(a)(5) (eff. Oct. 1, 2020), for leave to appeal from that refusal. She argued in her petition that an answer to the question of the trial court's continuing jurisdiction in child protection cases is important because "circuit courts routinely claim that they cannot enter any orders—including orders that all parties agree are in the child's best interest—when an appeal of right is pending" when the law in fact "only prevents the trial court from entering orders that would thwart appellate review of the judgment being appealed." The public guardian, reversing its position on the matter, filed a response opposing the petition for leave to appeal. The State did not respond.

¶ 20      We granted the petition for leave to appeal on August 20, 2024. We took the additional step, in our order, of vesting the trial court with limited jurisdiction to rule on the motion for unsupervised day visits, noting that our choice to do so should be viewed as no indication of our view on the merits of this appeal.

¶ 21      In accordance with that order, the trial court held a hearing on Shaniqua's motion for unsupervised visits with D.F. on September 9, 2024. The court granted the motion, subject to certain conditions, including that the visits would occur at DCFS discretion and only after D.F.'s therapist approved of them in writing. The court continued the case for a progress report on the girls and a permanency hearing for D.F. on December 9, 2024.

¶ 22      The public guardian has since filed two "emergency" motions in this court for leave to inform us of subsequent events in the trial court, including its filing on December 6, 2024, of a motion to suspend the unsupervised day visits and the trial court's refusal, on December 9, to entertain that motion, again based on a lack of jurisdiction. We entered a second order revesting the court with jurisdiction to decide that motion, again noting that our decision to do so had no bearing on the merits of this appeal.

¶ 23                                    II. JURISDICTION

¶ 24    Shaniqua timely petitioned this court on August 2, 2024, for leave to appeal from the trial court's refusal to hear her motion for unsupervised day visits with D.F. and to hold a permanency hearing with respect to D.F. We granted her petition on August 20, 2024, and have jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 306(a)(5) (eff. Oct. 1, 2020), which provides for discretionary interlocutory appeals from "orders affecting the care and custody of or the allocation of parental responsibilities for unemancipated minors."

¶ 25                                    III. ANALYSIS

¶ 26    We are asked to consider here what effect the filing of an appeal from a final order entered midway through child protection proceedings has on those ongoing proceedings during the pendency of the appeal. Some context is necessary, we believe, even before we discuss the argument made by the State and the public guardian that this appeal should be dismissed as moot.

¶ 27    Typically, a case begins in juvenile court when a child is taken into temporary custody by the police or DCFS. 705 ILCS 405/2-5, 2-6, 2-7 (West 2022). A petition for an adjudication of wardship is filed and a summons issued. *Id.* §§ 2-13, 2-15. A temporary custody hearing must then be held within 48 hours. *Id.* § 2-9(1). By statute, an adjudicatory hearing is to then be held within 90 days (absent good cause for a continuance) to determine whether the minor is abused, neglected, or dependent, as alleged in the petition. *Id.* §§ 1-3(1), 2-14, 2-21(1). If such a finding is made, the trial court then conducts a dispositional hearing to determine whether it is in the minor's best interests to be made a ward of the court. *In re G.F.H.*, 315 Ill. App. 3d 711, 715 (2000); 705 ILCS 405/2-22(1) (West 2022).

¶ 28    A petition for wardship will be granted where the court determines that the minor's parents

8

are "unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so" and "the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of [the minor's] parents, guardian or custodian." 705 ILCS 405/*Id.* 2-27(1) (West 2022). The court then hears evidence regarding what disposition will best serve "the health, safety and interests of the minor and the public" *Id.* § 2-22(1). A common disposition, and the one ordered in this case with respect to D.F., is for the minor to be made a ward of the court and DCFS given the authority to place the minor in foster care. *Id.* §§ 2-23(1)(a)(2), 2-27(1)(d).

¶ 29    Adjudicatory and dispositional findings are immediately appealable upon entry of the dispositional order. *In re Barion S.*, 2012 IL App (1st) 113026, ¶ 36. A dispositional order does not terminate parental rights, however, and its findings reflect a family's situation at a single moment in time during the child protection proceedings. The purpose of the dispositional order is to "give the parents fair notice of what they must do to retain their rights to their child." *In re G.F.H.*, 315 Ill. App. 3d at 715. The Act expressly provides that, upon making a minor a ward of the court, the court must admonish the minor's parents regarding what they must do if they wish to retain their parental rights. *Id.* (citing 705 ILCS 405/2-22(6) (West 1998)).

¶ 30    The Act also requires, beginning within 12 months from the date that temporary custody is taken (whether or not an adjudicatory hearing has been held) and continuing throughout the case, that permanency review hearings be held at least every 6 months. 705 ILCS 405/2-28(2) (West 2022). The court considers at those hearings the appropriateness of the recommended services, whether those services have been provided, and whether all parties have made reasonable efforts to achieve the established permanency goal. *Id.* §§ 1-3(11.1), 2-28(2). Two of the possible

outcomes that loom on the horizon during this time are reunification of the parent or parents with the child or the termination of parental rights. An abused or neglected minor will be restored to the custody of his or her parent only when "a hearing is held on the issue of the best interests of the minor and *** the court enters an order that such parent, guardian or legal custodian is fit to care for the minor." *Id.* § 2-23(1)(a). Conversely, a parent's failure to make reasonable progress toward the return home of their child during any nine-month period following an adjudication of abuse or neglect is one basis on which a termination of parental rights may be sought under the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)). *In re N.F.*, 2020 IL App (1st) 182427, ¶ 39. "Reasonable progress is an objective standard that requires, at a minimum, measurable or demonstrable movement toward reunification." (Internal quotation marks omitted.) *Id.* And "[a] parent's compliance with service plans and court directives is the benchmark for measuring reasonable progress." *Id.*

¶ 31     At each permanency hearing, the court "is essentially asking how well the previous disposition worked," and, if it is not working, what changes should be made. *In re A.A.*, 315 Ill. App. 3d 950, 953 (2000). One change the court can make is to visitation. *Id.* In this regard, we have recognized that the loss of visitation rights may serve as " 'the stick' the court is holding over [the] respondent's head to get compliance" with ordered services like counseling. *Id.* Conversely, the granting of unsupervised visitation is often the court's way of recognizing and memorializing the parent's progress. See, *e.g.*, *In re A.C.*, 2024 IL App (1st) 232374, ¶ 15 (trial court noted that unsupervised visits "might be a possibility" because the mother had " 'made some progress' " and "completed some services"). With this framework in mind, we consider the parties' arguments.

¶ 32          A. The Public Interest Exception to the Mootness Doctrine Applies Here

¶ 33     The State and the public guardian argue that we should dismiss this appeal as moot. "An issue on appeal becomes moot where events occurring after the filing of the appeal render it impossible for the reviewing court to grant effectual relief to the complaining party." (Internal quotation marks omitted.) *In re Christopher K.*, 217 Ill. 2d 348, 358-59 (2005). "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009).

¶ 34     When we revested the trial court with limited jurisdiction to consider Shaniqua's motion for unsupervised visitation, the correctness of the court's refusal to entertain that motion absent such an order was indeed rendered moot. Shaniqua argues this appeal is not completely moot, however, because the trial court also refused to hold a permanency hearing for D.F., a matter not addressed in our order and which the trial court has still refused to act upon based on a perceived lack of jurisdiction. Shaniqua's challenge to that refusal will of course be mooted when our mandate issues in her appeal from the trial court's adjudicatory findings, which we recently affirmed in part and reversed in part. *In re K.C.*, 2024 IL App (1st) 1240430, ¶ 94.

¶ 35     It is worth pointing out that once an appellate court mandate issues following the appeal of a dispositional order, *any* appeal from a trial court's refusal to exercise jurisdiction while that appeal was pending will be mooted. Our revesting the trial court with limited jurisdiction to consider unsupervised visits in this case only hastened that process. Thus, if mootness or impending mootness is a bar, this court could never consider the issue that Shaniqua raises here.

¶ 36     We need not decide whether, for some fleeting period of time, a portion of this appeal still

presents a live controversy because we agree with Shaniqua that even if it does not, the public interest exception to the mootness doctrine applies here. That exception allows a court to reach the merits of a case which would otherwise be moot if (1) "the question presented is of a public nature," (2) "an authoritative resolution of the question is desirable for the purpose of guiding public officers," and (3) "the question is likely to recur." *Jackson v. Board of Election Commissioners of Chicago*, 2012 IL 111928, ¶ 44. The exception is construed narrowly, with a clear showing of each criterion required. *Christopher K.*, 217 Ill. 2d at 360.

¶ 37     We find our supreme court's opinion in *In re Rita P.*, 2014 IL 115798, ¶¶ 36-39, relied on by Shaniqua, instructive. The respondent in that case appealed from an order authorizing her involuntary treatment with psychotropic medication on the grounds that the trial court failed to include a statutorily required statement of its findings of facts and conclusions of law in its order. *Id.* ¶ 1. The appeal was rendered moot by the expiration of the 90-day treatment period, but the respondent argued it should still be considered under the public interest exception. *Id.* ¶ 24. Our supreme court agreed. *Id.* ¶ 40. The first requirement was met, it concluded, because the appeal did not present a case-specific inquiry like the sufficiency of the evidence, but rather an issue of general applicability in mental health cases—whether the statutory requirement for written findings was mandatory or directory—that would affect the procedures to be followed in other cases. *Id.* ¶ 36. The second requirement was also met, the court concluded, because no court of review had directly addressed the question and because the state's attorneys of different counties had adopted inconsistent positions on the matter. *Id.* ¶¶ 37-38. And the third requirement was met because the statutory provision applied in all cases under the Mental Health and Developmental Disabilities Code (405 ILCS 5/3-816(a) (West 2010)) and the question of its proper application

was thus certain to recur. *Rita P.*, 2014 IL 115798, ¶ 39.

¶ 38    The public guardian asserts that *Rita P.* is distinguishable because, unlike here, the court

in that case was asked to interpret a statutory provision. But the construction of a statute and the

trial court's assessment of its own continuing jurisdiction are both purely legal matters affecting

how a broad category of cases will proceed. See *id.* ¶ 43 (construction of a statute); *Enbridge*

*Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 26 (trial court's jurisdiction). *Rita*

*P.* is strong precedent for our finding that the requirements for the public interest exception to the

mootness doctrine are met here.

¶ 39    The first criterion—that the issue raised is of a public nature—is surely satisfied here. The

trial court's jurisdiction to enter orders necessary for the reunification of a minor with his or her

parent while an appeal from the court's adjudicatory or dispositional findings is pending could not

be of greater concern to the public. The public guardian acknowledges this, noting that "the issue

of unsupervised day visits, permanency planning, and reunification *are important issues in child*

*protection cases in general.*" (Emphasis added.) It insists, however, that Shaniqua cannot show

that the question presented here is of a substantial public nature because the underlying facts and

circumstances of her case "are unique from other cases." But of course they are. Child protection

cases are notoriously *sui generis*. *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004). The nature of the

rulings the trial court is asked to make during the pendency of an appeal will certainly differ from

case to case, but the narrow legal issue of the court's jurisdiction to make such rulings will be the

same in each. Whether the trial court can continue to enter orders while an appeal is pending is an

issue that can greatly impact how these cases will progress in the trial court.

¶ 40    The situation here differs significantly from that in *Felzak v. Hruby*, 226 Ill. 2d 382 (2007),

13

relied on by the public guardian. Our supreme court concluded in that case that while other agreed orders for grandparent visitation had no doubt been made under a statutory provision that was later deemed unconstitutional, the number of those orders was diminishing as the minors affected by them, like the minor in that case, reached 18 years of age. *Id.* at 393-94. It had therefore "not been clearly established that th[e] issue [wa]s of sufficient breadth, or ha[d] a significant effect on the public as a whole, so as to satisfy the substantial public nature criterion." *Id.* at 393. Situations in which the trial court is asked to exercise continuing jurisdiction in child protection cases while an appeal from its adjudicatory and dispositional findings is pending are not similarly dwindling over time but rather are likely to remain constant.

¶ 41    The second criterion for the exception is whether an authoritative resolution of the issue is desirable. The State and public guardian maintain that one is unnecessary because there is already a mechanism for a party to request, in individual cases, that this court remand to the circuit court with limited jurisdiction to decide an issue while the appeal is pending. We reject this argument. While we are well aware that this mechanism exists and have addressed such motions in other cases, this procedure requires the party desiring an order from the trial court to file a substantive motion in this court, asking us to revest the trial court with jurisdiction, to which the other parties are entitled, and indeed expected, to respond. This procedure puts considerable burdens not only on the parties but on this court. When these motions are filed, the underlying appeal has not yet been decided and, in some cases, is not fully briefed, meaning no justice of this court is necessarily familiar with the case. These motions are decided by an appellate court justice (or perhaps a panel of three justices) with no preexisting knowledge of the record, the family, or, in many cases, of child protection issues generally. If the trial court does in fact have jurisdiction, asking this court

to revest it with jurisdiction in specific cases for specific motions is completely unnecessary and an extremely inefficient use of party and court resources. This is especially true because, as the public guardian's most recent filings in this court make clear, multiple issues are likely to arise during an appeal, necessitating separate motions to revest jurisdiction for each.

¶ 42    The public guardian's assertion that the matter of the trial court's continuing jurisdiction in child protection cases is already addressed by existing appellate court authority is also completely unpersuasive. Both the State and the public guardian take the position here that Shaniqua's appeal of the dispositional order deprived the trial court of jurisdiction to decide issues of visitation, reunification, and permanency planning. But the two cases the public guardian cites as evidence that this issue has already been considered both go the other way, recognizing that trial courts do indeed continue to have such jurisdiction while an appeal is pending. See *In re Johnson*, 102 Ill. App. 3d 1005, 1011, 1016 (1981) (father's appeal of dispositional order did not deprive the trial court of jurisdiction to decide mother's motion for vacatur of guardianship order and return of child to her); *In re Johnson*, 134 Ill. App. 3d 365, 369 (1985) (*Stacie Johnson*) (noting, even after an appeal is taken from a dispositional order, that "circuit court jurisdiction in matters involving minors adjudicated abused and placed in the custody of DCFS is necessarily of a continuing nature")

¶ 43    We find it confusing, to say the least, for the public guardian to contend that this issue is well settled and then to argue for a position that is contrary to what it is citing as the established law. Indeed, with leave to do so from this court, the public guardian has submitted an appendix consisting of an affidavit attaching filings in six other cases where a motion was filed to revest the trial court with jurisdiction to decide an issue while an appeal from a dispositional order was

pending. The public guardian took positions in those past filings that not only conflict with each other but also with the position it now advances. Compare Minors' Motion to Revest Limited Jurisdiction in the Trial Court at 3, In re Victoria V., 2013 IL App (1st) 131432-U (Sept. 4, 2013) (No. 1-13-1432) (asserting that it "is not clear whether the trial court has jurisdiction to conduct a permanency planning hearing" while an appeal from adjudicatory and dispositional findings is pending) with Minors' Motion to Release Limited Jurisdiction to the Trial Court to Conduct a Permanency Planning Hearing at 3, In re J.V., 2018 IL App (1st) 171766 (Jan. 29, 2018) (No.1-17-1766) (arguing, based on *Johnson*, that the trial court *does* have continuing jurisdiction pending an appeal).

¶ 44    Despite the holdings of *Johnson* and *Stacie Johnson*, the parties and judges in child protection cases are taking the position in at least some cases, including this one, that the trial court loses jurisdiction to decide motions for visitation or to hold permanency hearings when an appeal is pending from a dispositional order. Shaniqua's counsel estimated at oral argument in this court that at least half of the 12 judges in the child protection division of the circuit court of Cook County have taken this all-or-nothing jurisdictional approach.

¶ 45    Until this petition for leave to appeal was filed and granted, this court's ability to comment on this practice in the trial courts has been limited by the fleeting nature of a live controversy. Just recently, for example, in *In re J.W.*, No. 1-24-2178 (Dec. 3, 2024) (motion order), this court denied a motion to revest the trial court with jurisdiction during the pendency of an appeal, on the grounds that "[t]he trial court [was] not divested of jurisdiction as it relates to either the mother's motions before the trial court or decisions made in the best interest of [the minor in that case]." But that order was an order seen only by the parties to that case and did little to address this apparently

widespread practice by the trial courts.

¶ 46    Where the state of the law leaves a party free to advance opposing positions, as the perceived needs of a particular case dictate, on a purely legal matter that should be decided consistently in all such cases, and where trial court judges faced with the same legal precedent routinely take opposing views on that matter, we are convinced that an authoritative resolution is needed.

¶ 47    The third criterion for the public interest exception is whether this issue is likely to recur. There can be no doubt that it has and will continue to do so. As noted above, the public guardian has submitted an affidavit citing six appeals that it is aware of, since 2012, where a motion to revest limited jurisdiction was filed with the First District. We are aware of at least one more case in which such a motion was recently filed, In re J.W., No. 1-24-2178, which is noted above. This knowledge is purely anecdotal since the court's docketing system does not allow a comprehensive search for such motions, but we suspect that there are more. The cases where motions to revest are filed in this court are only those in which the attorneys understood that they could request that relief and took the time to do so. We suspect that in many other cases no such motion gets filed, even where the trial court has refused to consider motions or hold permanency hearings pending an appeal. We are comfortable that this refusal to exercise jurisdiction is "likely to recur."

¶ 48    The public guardian insists that when considering this requirement, we must focus on whether the issue is likely to recur, not just for any parent in a child protection case, but for Shaniqua herself. However, a reasonable expectation that the same complaining party will be subject to the same action again is simply not an element of the public interest exception to the mootness doctrine. See *Jackson*, 2012 IL 111928, ¶ 44 (listing the three criteria for that exception).

17

Rather, it is a requirement for another exception to the mootness doctrine, where an issue is capable of repetition yet avoiding review. See *Alfred H.H.*, 233 Ill. 2d at 358-59 (examining the two exceptions and the different elements of each).

¶ 49     We conclude that all three elements of the public interest exception to the mootness doctrine are present here. We additionally note that the basis for the mootness doctrine itself is "the fear that parties to a resolved dispute [will] lack a stake in its outcome sufficient to ensure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult *** questions." (Internal quotation marks omitted.) *Christopher K.*, 217 Ill. 2d at 359. The vigorously advocated positions advanced by the parties in this appeal, in their written briefs, and at oral argument in this court assure us that the fears surrounding the resolution of a mooted question are not present here.

¶ 50     B. The Trial Court Has Continuing Jurisdiction Pending Appeal in Child Protection Cases
to Enter Orders that Do Not Change the Specific Judgment Being Appealed

¶ 51     "Whether the trial court had jurisdiction is a question of law reviewed *de novo*." *Enbridge Pipeline*, 2019 IL App (4th) 150544-B, ¶ 26. The State acknowledges this, but the public guardian insists that a trial court's decision to decline jurisdiction must be affirmed "absent an abuse of discretion." Even a cursory reading of *Kuehl v. Kuehl*, 186 Ill. App. 3d 31, 34 (1989), the case the public guardian relies on for this proposition, reveals that it has no application here.

¶ 52     The question in *Kuehl* was not whether the circuit court had subject matter jurisdiction over the matter before it but whether, as one of several courts that might properly exercise such jurisdiction, it was the most appropriate one to do so. *Id.* at 32. The mother in that case sought injunctive relief forbidding her ex-husband from removing their daughter from Illinois and an

award of custody in her favor. *Id.* The circuit court concluded that both Iowa, the state where the dissolution of marriage and initial custody award had both been entered, and Arizona, where the ex-husband and daughter then resided, would be more appropriate fora to decide those issues. *Id.* We affirmed. *Id.* Assuming *arguendo* that the circuit court had subject matter jurisdiction over the mother's petition, we noted that the Uniform Child Custody Jurisdiction Act (Ill. Rev. Stat. 1987, ch. 40, ¶ 2108(a)) permitted a court with jurisdiction over a case to decline the exercise of that jurisdiction if it concluded that the court of another state was a more appropriate forum. *Kuehl*, 186 Ill. App. 3d at 33-34. The question here is whether the trial court had jurisdiction in the first place, not whether, possessing that jurisdiction, it was the most appropriate forum to hear the case. *Kuehl* has no application here, and our review is *de novo*.

¶ 53     The State and public guardian are correct that, in general, the trial court loses jurisdiction over a case when a timely notice of appeal is filed. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011). "The mandate of a reviewing court is the transmittal of its judgment to the circuit court, which revests the latter with jurisdiction," and "[i]f the circuit court attempts to act after the notice of appeal is filed, but before the reviewing court's mandate is returned, such actions are void." *Butler v. State Board of Elections*, 188 Ill. App. 3d 1098, 1100 (1989); see *In re Marriage of Sawyer*, 264 Ill. App. 3d 839, 850 (1994) (noting that "[u]pon filing a notice of appeal, the trial court is divested of jurisdiction to enter any order involving a matter of substance, and the jurisdiction of the appellate court attaches *instanter*").

¶ 54     There is a notable exception to this rule, however. "[T]he trial court retains jurisdiction to determine matters arising independent of and collateral to the judgment." *Sawyer*, 264 Ill. App. 3d at 850. "[O]rders entered after the filing of the notice of appeal[, therefore,] are valid if the

19

substantive issues on appeal are not altered so as to present a new case to the reviewing court." *R.W. Dunteman Co. v. C/G Enterprises, Inc.* 181 Ill. 2d 153, 162 (1998).

¶ 55    This exception has been specifically recognized in child protection cases. In *Johnson*, 102 Ill. App. 3d at 1016, for example, we observed that "when a parent has been deprived of the custody of his child at a time when the child is declared neglected, the court's jurisdiction is a continuing one." We concluded there that the trial court not only had jurisdiction to consider the mother's motion to vacate the court's guardianship order and return the child to her while the father's appeal from the court's dispositional order was pending but was "duty bound" to exercise that jurisdiction "to facilitate the stated purpose of the Juvenile Court Act." *Id.* at 1018. In *Stacie Johnson*, 134 Ill. App. 3d at 369, we likewise held that the trial court's act of setting a further review date in a child protection case while an appeal from its dispositional order was pending did not prevent that order from being final and appealable because "[e]ven after an appeal is taken, circuit court jurisdiction in matters involving minors adjudicated abused and placed in the custody of DCFS is necessarily of a continuing nature."

¶ 56    A primary argument advanced by the State and the public guardian in support of the trial court's refusal to consider Shaniqua's motion for unsupervised visitation is that a visitation order "is a type of disposition order," and the trial court cannot enter a new dispositional order while the original one is on appeal. As an initial matter, we disagree with the premise this argument is based upon. The State and public guardian point out that "visiting orders" are mentioned in section 2-23 of the Act, titled "Kinds of dispositional orders." 705 ILCS 405/2-23(3) (West 2022). But this completely ignores the structure of that section. It is subsection (1) that specifies the "kinds of orders of disposition [that] may be made in respect of wards of the court." *Id.* § 2-23(1). Subsection

(2) provides that an order of disposition may also provide for protective supervision or include an order of protection, and subsection (3), relied on by the State and the public guardian here, clearly provides that "[t]he court also shall enter *any other orders necessary* to fulfill the service plan, including, but not limited to *** visiting orders." (Emphasis added.) *Id.* § 2-23(2)-(3). The plain reading of the section, as a whole, is clear: a visiting order is a type of "other order" that may be entered at a dispositional hearing, but it is not itself a dispositional order. Shaniqua's motion for unsupervised visits, therefore, was not, as the State insists, "a motion *** directed against the dispositional order" and did not "require the circuit court to enter a new disposition of the case."

¶ 57    More broadly, however, it is our view that even a new dispositional order *can* be entered by the trial court while an appeal from a previous dispositional order is pending. Shaniqua points to three analogous situations in which it is imperative that the trial court retain continuing jurisdiction to revisit matters resolved by its prior orders while those orders are on appeal: to modify child support awards in dissolution of marriage cases and, in criminal cases, to assess the need for continued pretrial detention and to hold restoration of fitness hearings where a defendant has been ruled unfit to stand trial. As in each of those situations, the dispositional findings reached in a child protection case reflect a single moment in time and may well need to be reassessed based on changing circumstances.

¶ 58    We held in *In re Marriage of Petramale*, 102 Ill. App. 3d 1049 (1981), for example, that the trial court retained jurisdiction to modify an award of child support based on changed circumstances even while an appeal from the dissolution of marriage order that awarded that child support in the first place was still pending. Shaniqua argues that "[l]ike child support orders, dispositional orders, permanency goals, and visitation orders in child protection cases remain

21

modifiable throughout the duration of the case." The State counters that the holding in *Petramale* is not applicable here because a child support order in a dissolution of marriage case is "not a final order." As Shaniqua points out in her reply, however, the *Petramale* court in fact recognized that a decree of child support *was* a final order but, "unlike other final orders," one that was "always modifiable."

¶ 59    In the criminal context, we held in *People v. Rivera*, 2024 IL App (1st) 240520, ¶ 22, that the circuit court necessarily retained jurisdiction to continue to assess a criminal defendant's continued pretrial detention at every subsequent hearing—as it is required by statute to do—even while an appeal from its initial pretrial detention order was pending. And in *People v. Elsholtz*, 136 Ill. App. 3d 209, 210 (1985), we held that the circuit court retained jurisdiction to hold restoration of fitness hearings even while its initial finding that a criminal defendant was unfit to stand trial was being appealed.

¶ 60    The public guardian attempts to distinguish these cases, on the basis that statutory provisions required those courts to continue to hear issues while an appeal was pending. But there are analogous provisions of the Act that apply in child protection. The statutes relied on in the cases cited by Shaniqua merely state that the court has continuing jurisdiction to modify certain orders. See 750 ILCS 46/808 (West 2022) (noting that "[t]he court has continuing jurisdiction to modify an order for child support, allocation of parental responsibilities, parenting time, or relocation included in a judgment entered"); 750 ILCS 5/510(a) (West 2022) (providing that an order of child support may be modified upon a showing of a substantial change in circumstances or without such a showing if certain conditions are met); 725 ILCS 5/110-6.1(i-5) (West 2022) (providing that at each subsequent appearance in a criminal case the judge must find that continued

pretrial detention is necessary); 725 ILCS 5/104-20(a) (West 2022) (requiring a court to reexamine a criminal defendant's fitness to stand trial within 90 days following the entry or continuation of an order to undergo treatment). In child protection cases, section 2-23(2) of the Act does precisely the same thing. It states that "[u]nless the order of disposition expressly so provides, it does not operate to close proceedings on the pending petition [for wardship], but is subject to modification *** until final closing and discharge of the proceedings ***." 705 ILCS 405/2-23(2) (West 2022).

¶ 61    In each of the cases cited by Shaniqua, a determination was made—the proper amount of child support, a criminal defendant's fitness to stand trial, or the appropriateness of pretrial detention—that reflected the circumstances as they existed at a specific point in time. An adjudicatory finding of abuse or neglect is likewise a finding that at a certain point in time—the time the petition was filed—a child was abused or neglected. See *id.* § 1-3(1). And a dispositional finding is a finding that at a certain point in time—when the dispositional hearing was held—the child was properly adjudged a ward of the court. *Id.* § 1-3(6). An appeal as of right taken from a dispositional order reviews only these specific findings. While a finding that abuse or neglect occurred at some historic point is static, the question of whether the child should be adjudged a ward of the court is not. The best interests of the minor may require a reexamination of that at any time, and an appeal by one or both parents should not preclude it.

¶ 62    The public guardian cites two cases—*In re Rayshawn H.*, 2014 IL App (1st) 132178, and *In re Reiny S.*, 374 Ill. App. 3d 1036 (2007)—in which orders entered by the trial court while an appeal was pending gave rise to arguments that all or part of the appeal had been mooted. In *Rayshawn H.*, the trial court entered a dispositional order sending the child home while an appeal from an earlier dispositional order making the child a ward of the court was still pending.

*Rayshawn H.*, 2014 IL App (1st) 132178, ¶ 39. In *Reiny S.*, the trial court changed the minor's permanency goal to private guardianship while the State's appeal from the denial of its petition for a termination of parental rights was pending. *Reiny S.*, 374 Ill. App. 3d at 1051. In both of those cases the trial court recognized that it had jurisdiction to enter orders while an appeal was pending, and nothing we said in our decisions on appeal suggested otherwise. Thus, neither of those cases offer any legal precedent that supports the public guardian's position in this case.

¶ 63    To the extent the public guardian is suggesting that these cases offer a policy rationale for limiting the jurisdiction of the trial court in child protection cases while an appeal is pending, we reject it. The possibility that a subsequent order entered by the trial court could moot an issue on appeal does not provide any rationale for limiting the trial court's jurisdiction. Rather, the trial court in child protection cases retains jurisdiction to decide anything that does not alter the judgment that is being appealed from. It loses jurisdiction to determine that the dispositional order that is being appealed or a finding of abuse or neglect underlying that order was wrong, but it retains jurisdiction to enter a new dispositional order in light of changed circumstances, as well orders on visitation, permanency, or other matters that were not specifically addressed in the order that is being appealed from.

¶ 64    The express purpose of the Act is to secure for a minor the "care and guidance, *preferably in [the minor's] own* home, as will serve the safety and moral, emotional, mental, and physical welfare of the minor," to "preserve and strengthen the minor's family ties whenever possible," and to "remov[e] [the minor] from the custody of [the minor's] parents only when [the minor's] safety or welfare or the protection of the public cannot be adequately safeguarded without removal." (Emphasis added.) 705 ILCS 405/1-2(1) (West 2022). Expediency is key. Courts are directed to

act "in a just and speedy manner" to reunify families whenever possible (*id.* § 2-14(a)), a specific admonition that is repeated elsewhere in the Act (*id.* § 1-5(2)(b)) and underscored by other deadlines and timetables established throughout (see, *e.g.*, *id.* § 2-28(2) (requiring permanency hearings to be held at least every six months and a goal of return home to be "within a period not to exceed one year")). Our supreme court, quoting the public guardian, has made clear that " '[d]elay is antithetical to the purpose and policy' " of both the Juvenile Court Act and the Adoption Act. *In re D.F.*, 208 Ill. 2d 223, 232 (2003). We need not repeat here the social science cited by Shaniqua supporting such expediency. That each day reunification is delayed is harmful to a child held in foster care is, we believe, self-evident.

¶ 65    As the public guardian acknowledged at oral argument in this court, the nine-month period during which a parent must demonstrate reasonable progress toward the return home of their child or risk becoming eligible for a termination of their parental rights (see 750 ILCS 50/1(D)(m)(ii) (West 2022)) is not tolled while an appeal from a dispositional order is pending. The parent must continue to engage in referred services. But if the trial court refuses to entertain any motions during that time, then the parent has no forum available to seek modifications to the recommended services (a change of provider, for example) or to seek the increased visitation that would otherwise be permitted upon a showing of continued progress. Absent continuing jurisdiction in the trial court, the parent's decision to file an appeal would freeze all court-approved plans, even if changing circumstances required their modification.

¶ 66    Even expedited appeals take time, and unsupervised day visits, followed by unsupervised overnight visits, and ultimately a return home, are the recognized milestones marking the path toward reunification. A parent is not required to choose between their statutory right to appeal the

court's adjudicatory and dispositional findings and their ability to demonstrate the progress needed for the return home of their child. Appellate review and reunification efforts must therefore be allowed to proceed in tandem.

¶ 67    The public guardian's opposition to this position, in particular, is incomprehensible. As its remarks to the contrary in the trial court suggest, it is the minors in these cases, just as much as the parents, who stand to benefit from the trial court exercising continuing jurisdiction during an appeal. Indeed, in the appendix that the public guardian filed in this court, it cites several cases in which *it* was the party asking this court to revest the trial court with jurisdiction so that an order could be entered on behalf of a minor it represented while an appeal was pending. These included orders closing a case with the minor in the continued custody of his father, seeking a permanency hearing, and returning a minor home to his father. In one of those appeals, another party objected to the requested relief, this court denied the motion to revest, and the public guardian's motion was not heard by the trial court. The trial court's inability even to consider the merits of a motion brought on behalf of a child who is a ward of the court because an unrelated appeal is pending simply cannot be in that child's best interests. Trial courts have both the jurisdiction and the duty to continue to hear such motions while an appeal is pending.

¶ 68    Finally, the State suggests that it is not proper to ask this court to *revest* the trial court with limited jurisdiction, but rather that we may *remand* for the purpose of allowing the trial court to exercise such jurisdiction. It urges us to use the word "remand" because that is the word used in Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), which gives the appellate court the power to "make any other and further orders and grant any relief, *including a remandment *** that the case may require*." (Emphasis added.). The State uses both terms in its brief. We are not

sure that this word choice matters generally, but it clearly does not in this instance since, in our view, the trial courts have continuing jurisdiction in child protection cases as outlined in this opinion.

¶ 69                    IV. CONCLUSION

¶ 70    We hold that the trial court has continuing jurisdiction to enter orders during the pendency of an appeal from the court's adjudicatory findings and disposition of wardship, so long as those orders do not alter the judgment being appealed, with the understanding that the judgment appealed from is a narrow one, based on findings that *at a certain point in time* there was abuse or neglect and, at a later *specific* point in time, the child was properly made a ward of the court. We reverse the trial court's ruling here that it could not entertain a motion seeking changes to court-ordered limits on visitation while an appeal from its adjudicatory and dispositional findings was pending.

¶ 71    Reversed.

No. 1-24-1566

---

*In re D.F.*, 2024 IL App (1st) 241566

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-JA-00835; the Hon. Levander Smith Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Brittany M. Barclae and Samuel M. Hayman, Assistant Public Defenders, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham. Brian Levitsky, and Gina DiVito, Assistant State's Attorneys, of counsel), for the People. |
| | Charles P. Golbert, Public Guardian, of Chicago (Kass A. Plain and Carrie Fung, of counsel), for other appellee. |